UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ALEJANDRO DIAZ,<br><br>Plaintiff,<br><br>v.<br><br>VALENTE, et al.,<br><br>Defendants. | Case No. 25-cv-00003-PCP<br><br>**ORDER GRANTING IN FORMA PAUPERIS APPLICATION, DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 6 |

Jose Diaz, an inmate at the Valley State Prison in Chowchilla, California, filed a *pro se* civil rights action under 42 U.S.C. § 1983 regarding events that occurred while he was held at Monterey County Jail. For the reasons stated below, Mr. Diaz's complaint is dismissed with leave to amend. Mr. Diaz's application to proceed in forma pauperis is granted.

I.  **Background**

On January 1, 2019, Mr. Diaz was incarcerated in Monterey County Jail. On that date, Mr. Diaz had just had a hip replacement surgery, was disabled, wore a brightly colored vest which identified him as a disabled prisoner, and used a walker. *See* Compl. at 4.[1]

On January 1, 2019, Mr. Diaz was waiting in the foyer of his dormitory when he "observed a 'raid of officers' enter[] the foyer with 'armor [and] pepperspray guns.'" Defendant Valente, an officer at the Monterey County Jail, was among these officers. Defendant Valente "pulled [Mr. Diaz's] walker from [him] and tossed it down the foyer." Defendant Valente then grabbed Mr. Diaz to "picsit" him. Defendant Valente used force to place Mr. Diaz on the floor and then placed both of his knees on Mr. Diaz's waist. *See id*. at 6; *cf. id*. at 8 (claiming defendant Valente placed

---

[1] The Court uses the pagination applied by the Case Management/Electronic Case Files system.

his knees on Mr. Diaz's back). Mr. Diaz alleges that defendant Valente's actions caused injuries. *See id*. at 15.

Public records show that Mr. Diaz left the custody of the Monterey County Jail no later than January 24, 2020. *See* California Department of Corrections and Rehabilitation Inmate Locator, https://inmatelocator.cdcr.ca.gov/ (results for "Jose Diaz," showing he entered CDCR custody on January 24, 2020) (last visited Aug. 28, 2025).[2] The instant action was filed on or after November 27, 2024. *See* Compl. at 3 (signing the complaint on that date); *see also Houston v. Lack*, 487 U.S. 266, 270–71 (1988) (announcing the prison mailbox rule).

## II.   Legal Standard

Federal courts must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III.   Analysis

Mr. Diaz's claims are untimely and unexhausted. The Court gives Mr. Diaz leave to amend so that he may explain why the exhaustion and time bars should not apply.

### A.   Untimeliness

Mr. Diaz wishes to sue defendant Valente for a violation of the Eighth Amendment to the United States Constitution, a violation of the Americans with Disabilities Act ("ADA"), and negligence under California law. California negligence claims have a two-year statute of limitations. *See* Cal. Code Civ. Proc. § 335.1. Section 1983 "borrows" the forum state's statute of limitations for personal injury actions, *see Wilson v. Garcia*, 471 U.S. 261, 278–80 (1985), so the statute of limitations for Mr. Diaz's Eighth Amendment claims also is two years. The Ninth

---

[2] The report from CDCR's Inmate Locator is a public record, and a proper subject for judicial notice. *See United States v. Lucas*, 841 F.3d 796, 802 (9th Cir. 2016) (taking judicial notice of publicly available information from the Federal Bureau of Prisons inmate locator); *United States v. Basher*, 629 F.3d 1161, 1165 & n.2 (9th Cir. 2011) (same).

Circuit has applied a three-year statute of limitations to ADA claims. *See Sharkey v. O'Neal*, 778 F.3d 767, 768 (9th Cir. 2015). Where the plaintiff is incarcerated, California tolls the statute of limitations for an additional two years. *See* Cal. Civ. Proc. Code § 352.1(a). Mr. Diaz thus had four years to bring his Eighth Amendment and state-law negligence claims, and five years to bring his ADA claim.

The statute of limitations began to run on January 1, 2019. "[T]he touchstone for determining the commencement of the limitations period is notice: 'a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006) (citations omitted). Here, Mr. Diaz repeatedly states that his injury occurred on January 1, 2019. *See* Compl. at 6–8, 15. The complaint reveals that Mr. Diaz knew of the injury when it occurred: He sought legal advice from a law firm regarding that injury and received a response from that law firm on February 12, 2019. *See id.* at 13–14; *see also id.* at 15 (stating that he "notified the attorneys" of his potential claim). The statute of limitations for all of Mr. Diaz's claims thus began to run on January 1, 2019. The statute of limitations for his state negligence and federal constitutional claims expired on January 1, 2023, and the statute of limitations for his ADA claim expired on January 1, 2024. The instant action was filed on or after November 27, 2024. *See* Compl. at 3; *see also Houston*, 487 U.S. at 270–71. This is well after all applicable statutes of limitations had expired. Mr. Diaz's claims based on the events of January 1, 2019 thus are time-barred.

Mr. Diaz does not explain why his claims should not be dismissed as time-barred, though he appears aware of other procedural bars. *See generally* Compl.; *see also infra* (evaluating Mr. Diaz's argument for why the exhaustion requirement should be excused). The Ninth Circuit has identified the limited circumstances in which a court may excuse a plaintiff's failure to comply with the statute of limitations.

> [T]here are two doctrines which may apply to extend the limitations period or preclude a defendant from asserting the defense—equitable tolling and equitable estoppel. … "Equitable tolling" focuses on "whether there was excusable delay by the plaintiff: If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to

3

extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." ... Equitable estoppel, on the other hand, focuses primarily on actions taken by the *defendant* to prevent a plaintiff from filing suit, sometimes referred to as "fraudulent concealment." ....

*Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (citations omitted). It appears that neither doctrine applies to the facts pleaded here. As explained above, Mr. Diaz knew of his injury at the time it occurred, as evidenced by his reaching out to an attorney regarding that injury. Although it seems unlikely that equitable tolling could apply here, if Mr. Diaz chooses to amend, he may attempt to circumvent the time bar by explaining why his delay in filing suit was excusable.

Equitable estoppel also seems inapplicable: Mr. Diaz has not identified any way in which defendant Valente prevented or delayed the filing of the instant lawsuit. Public records show that Mr. Diaz left the custody of the Monterey County Jail no later than January 24, 2020. *See* CDCR Inmate Locator, https://inmatelocator.cdcr.ca.gov/ (results for "Jose Diaz") (last visited Aug. 28, 2025). This fact shows that Mr. Diaz had nearly three years between the date he left the jail where defendant Valente worked and the date the first statute of limitations expired. This, in turn, suggests Mr. Diaz had three years in which he could have filed a timely claim without interference or retaliation from defendant Valente. If Mr. Diaz chooses to amend, he may attempt to circumvent the time bar by explaining how defendant Valente could have prevented or delayed the filing of this lawsuit during the three years Mr. Diaz was not housed at Monterey County Jail.

**B.      Lack of Exhaustion**

Mr. Diaz admits on the face of his complaint that he failed to exhaust his claims. *See* Compl. at 4. He argues that this failure should be excused because he was afraid of retaliation. *See id*. at 4, 8; *see also id*. at 16 (stating "I was in fear of my life, that's why I'm asking" for the exhaustion requirement to be excused).

As noted above, Mr. Diaz was outside the custody of Monterey County Jail for nearly three years before any statute of limitations expired. He therefore had ample time in which he could have attempted to his exhaust his claims without fear of retaliation; defendant Valente could not retaliate against a plaintiff who was no longer housed in the facility where defendant Valente

4

worked. If he chooses to amend, Mr. Diaz must explain why he feared retaliation from defendant Valente during the three years he was not housed in Monterey County Jail.

### IV. Conclusion

1. The Complaint does not state any cognizable claim. The Complaint is therefore DISMISSED WITH LEAVE TO AMEND. If he truthfully can provide facts to show the exhaustion and time bars should be excused, Mr. Diaz may amend his Complaint.

2. The AMENDED COMPLAINT shall be filed within **thirty-five days** from the date this order is filed. The amended complaint must include the caption and civil case number used in this order (25-cv-00003-PCP) and the words AMENDED COMPLAINT on the first page. In the amended complaint, Mr. Diaz must allege facts that demonstrate he is entitled to relief on every claim against every defendant. An amended complaint supersedes the original complaint. *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) ("[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262–63 (9th Cir. 1992) (where an amended complaint did not name all the defendants to an action, they were no longer defendants).

3. It is Mr. Diaz's responsibility to prosecute this case. He must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address." He also must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

4. Mr. Diaz is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

5. Mr. Diaz's motion to proceed *in forma pauperis* is GRANTED. *See* Dkt. No. 6. The initial partial filing fee is $35. *See* 28 U.S.C. § 1915(b)(1) (requiring a court to assess an initial filing fee of 20 percent of a prisoner's average monthly deposits or monthly balance, whichever is greater). A copy of this order and the attached instructions will be sent to Mr. Diaz via U.S. mail, and to the California Department of Corrections and Rehabilitation (CDCR) and the court's financial office via email at trusthelpdesk@cdcr.ca.gov and

CAND_Finance@cand.uscourts.gov.

**IT IS SO ORDERED.**

Dated: September 9, 2025

_____
P. Casey Pitts
United States District Judge

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

INSTRUCTIONS FOR PAYMENT OF PRISONER'S FILING FEE

The prisoner shown as the plaintiff or petitioner on the attached order has filed a civil action in forma pauperis in this court and owes to the court a filing fee. Pursuant to 28 U.S.C. § 1915, the fee is to be paid as follows:

The initial partial filing fee listed on the attached order should be deducted by the prison trust account office from the prisoner's trust account and forwarded to the clerk of the court as the first installment payment on the filing fee. This amount is twenty percent of the greater of (a) the average monthly deposits to the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition or (b) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition.

Thereafter, on a monthly basis, 20 percent of the preceding month's income credited to the prisoner's trust account should be deducted and forwarded to the court each time the amount in the account exceeds ten dollars ($10.00). The prison trust account office should continue to do this until the filing fee has been paid in full.

If the prisoner does not have sufficient funds in his/her account to pay the initial partial filing fee, the prison trust account office should forward the available funds, and carry the balance forward each month until the amount is fully paid. If the prisoner has filed more than one complaint, (s)he is required to pay a filing fee for each case. The trust account office should make the monthly calculations and payments for each case in which it receives an order granting in forma pauperis and these instructions.

The prisoner's name and case number must be noted on each remittance. The initial partial filing fee is due within thirty days of the date of the attached order. Checks should be made payable to Clerk, U.S. District Court and sent to Prisoner Accounts Receivable, U.S. District Court, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102.

cc:     Plaintiff/Petitioner

Court's Finance Office<br>United States District Judge